**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.                                                  No. 15-cv-0770 KG/SMV
                                                          14-cr-3643 KG-1

JOEL CORDOVA-ORDAZ
aka JOEL ORDEZ-CORDOVA,

    Defendant/Movant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Defendant/Movant ("Defendant") Joel Cordova-Ordaz's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("Motion"), filed on August 31, 2015. [CV Doc. 1, CR Doc. 29].[1] Plaintiff/Respondent ("the Government") responded on November 23, 2015. [CV Doc. 8, CR Doc. 37]. Defendant did not reply. The Honorable Kenneth J. Gonzales, United States District Judge, referred this matter to me for proposed findings and a recommended disposition ("PF&RD"). [CV Doc. 5]. I issued my first PF&RD on February 19, 2016, in which I recommended dismissing all claims except one—whether Defendant directed his counsel to file an appeal. [CV Doc. 9, CR Doc. 39] at 1. After Judge Gonzales adopted the PF&RD [CV Doc. 10, CR Doc. 40], I held an evidentiary hearing. [CV Doc. 18, CR Doc. 46]. Having reviewed the parties' submissions, the relevant law, the records in this case and both of Defendant's underlying criminal cases, and the evidence presented at the hearing, I recommend that the Motion be denied.

---

[1] References that begin with "CV" are to Case No. 15-cv-0770 KG/SMV. References that begin with "CR" are to the underlying criminal case, Case No. 14-cr-3643 KG-1.

**Background**

Defendant, a citizen of Mexico living legally in the United States, pleaded guilty to possession with intent to distribute more than 500 grams of cocaine in United States District Court for the Western District of Texas on July 7, 2010. *United States v. Gonzalez-Ramirez*, Case. No. 3:09-cr-01267-FM-5 (W.D. Tex. 2009) [ECF 254]. As a result, he was deported to Mexico. [CR Doc. 35] at 5. On September 2, 2014, a United States Border Patrol agent encountered Defendant in Doña Ana County, New Mexico. He was arrested and charged with illegally reentering the United States under 8 U.S.C. § 1326. [CR Doc. 1] at 1.

Defendant pleaded guilty without a plea agreement on October 24, 2014. [CR Doc. 36] at 4–19. He was represented at the plea hearing by attorney Noel Orquiz. *Id*. at 8.

The United States Probation Office ("USPO") prepared a presentence report ("PSR") and calculated Defendant's Base Offense Level at eight. PSR ¶ 10. Because Defendant had been previously deported subsequent to a conviction for a drug trafficking offense in which the sentence was in excess of 13 months, the USPO applied a 16-level increase pursuant to the United States Sentencing Guidelines ("USSG") § 2L1.2. PSR ¶ 11. Thus, Defendant's adjusted offense level was 24. PSR ¶ 15. Pursuant to Defendant's acceptance of responsibility, his offense level was reduced by three levels, which resulted in a Total Offense Level of 21. PSR ¶¶ 17–19. For his prior conviction, Defendant received three criminal history points. PSR ¶ 23. In addition, because Defendant committed the instant offense (illegal reentry) while under a criminal justice sentence, two additional points were added; thus, his criminal history score was 5, which established a Criminal History Category of III.

PSR ¶¶ 23–25.  Based on a Total Offense Level of 21 and a Criminal History Category of III, the Guideline imprisonment range was 46 to 57 months.  PSR ¶ 42.

Defendant was sentenced by the Honorable Joe Billy McDade, Senior United States District Judge, on February 27, 2015.  [CR Doc. 35].  Mr. Orquiz also represented him at the sentencing.  *Id*. at 3.  Mr. Orquiz argued for a sentence below the Guideline range.  *Id*. at 7.  Judge McDade imposed a sentence of 37 months, nine months below the low end of the Guideline range.  [CR Doc. 19].  Judge McDade twice advised Defendant of his right to appeal his sentence within 14 days.  [CR Doc. 35] at 10, 14.  Judgment was entered against Defendant on March 6, 2015.  [CR Doc. 19].

Defendant filed pro se a Notice of Appeal to the Tenth Circuit Court of Appeals on August 10, 2015, 157 days after judgment was entered against him.  [CR Doc. 22].  On August 24, 2015, the Tenth Circuit dismissed his appeal as untimely, noting that it was "inordinately late."  [CR Doc. 27-1] at 2.

Defendant filed the instant Motion on August 31, 2015.  [CV Doc. 1, CR Doc. 29].  In it, he made five claims of ineffective assistance of counsel: (1) Mr. Orquiz did not advise Defendant of his constitutional rights, resulting in an unknowing and involuntary guilty plea; (2) Mr. Orquiz did not object to the PSR with regard to Defendant's prior conviction; (3) Mr. Orquiz failed to argue that there were irregularities in the underlying deportation order; (4) Mr. Orquiz failed to ensure that there was an adequate factual basis for Defendant's guilty plea; and (5) Mr. Orquiz did not file an appeal even though Defendant indicated his desire to appeal or challenge his conviction immediately after sentencing based on his "actual innocence."  *Id*. at 4–8.  The

Government responded on November 23, 2015. [CV Doc. 8, CR Doc. 37]. Defendant did not reply.

I issued my first PF&RD on February 19, 2016, in which I recommended denying the Motion except with regard to the issue of whether Defendant directed Mr. Orquiz to file an appeal after sentencing. [CV Doc. 9, CR Doc. 39] at 1. After Judge Gonzales adopted the PF&RD [CV Doc. 10, CR Doc. 40], I set an evidentiary hearing [CV Doc. 17] and appointed counsel to represent Defendant [CV Doc. 12, CR Doc. 41]. Counsel did not supplement Defendant's original pro se Motion. At the evidentiary hearing on May 16, 2016, Mr. Orquiz and Defendant testified. [CV Doc. 18, CR Doc. 46].

**Standard**

A district court may grant relief under § 2255 if it determines "that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). The Sixth Amendment guarantees the right to effective assistance of counsel. *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir. 1980). To prevail on a claim of ineffective assistance of counsel, the defendant must prove by a preponderance of the evidence two things: first, "that counsel's representation fell below an objective standard of reasonableness," and second, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).

At issue is whether Defendant instructed Mr. Orquiz to file an appeal after sentencing. "[A] lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial." *United States v. Snitz,*

4

342 F.3d 1154, 1155–56 (10th Cir. 2003) (citations omitted).  "[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000) (quoting *Peguero v. United States,* 526 U.S. 23, 28 (1999)).  Thus, if Defendant actually asked Mr. Orquiz to file a notice of appeal and Mr. Orquiz ignored his request, Defendant is entitled to a delayed appeal.

## Evidentiary Findings and Conclusions of Law

Defendant and Mr. Orquiz have provided conflicting testimony as to whether or not Defendant asked Mr. Orquiz to file an appeal.  When there is conflicting testimony at a § 2255 evidentiary hearing, "it is ultimately the role of the district court . . . to assess credibility and weigh the evidence before it." *United States v. Gonzalez*, 209 F. App'x 842, 846–47 (10th Cir. 2006) (citing *United States v. Browning*, 252 F.3d 1153, 1157 (10th Cir. 2001)).  Credibility determinations are particularly the province of the judge conducting the hearing for only he can "be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).  As explained below, I find Mr. Orquiz's testimony to be more credible than Defendant's.  In his testimony at the evidentiary hearing and in his sworn affidavit filed with the Government's response, Mr. Orquiz stated that when he spoke to Defendant immediately after the sentencing hearing, he advised Defendant that he did not think there were any grounds for an appeal and that Defendant was satisfied with his answer.  [CV Doc. 8-1, CR Doc. 37-1] at 5; Hrg. Tr. at 12:14–25.[2]  He testified that he advised Defendant that there were no non-frivolous grounds for an appeal, and that Defendant never asked him to file an appeal.  *Id*. at 12:14–13:8.

---

[2] The transcript of the evidentiary hearing appears on the docket as [CV Doc. 19, CR Doc. 46].

Mr. Orquiz admitted that this conversation was very brief (one to two minutes) and took place in the courtroom, not in a private area. *Id*. at 16:14–17:11. He did not make note of this conversation in the case file. *Id*. at 17:25–18:10. He also did not note the conversation on his billing sheet, but stated that he billed it as part of the sentencing hearing. *Id*. at 17:12–24.

In contrast, in his sworn Motion, Defendant stated that he "met with his attorney immediately after sentencing and . . . did indicate his desire to appeal or challenge the conviction ('actual innocence')." [CR Doc. 29, CV Doc. 1] at 8. His statement in his Motion that he wanted to appeal because he was innocent is inconsistent with his own sworn statements at both his plea hearing and his sentencing. *See* [CR Doc 36] at 17–18 and [CR Doc. 35] at 7 ("I'd just like to apologize for having reentered illegally. . . . I made a mistake, and it was due to circumstances that made me attempt to reenter.").

Defendant testified that he spoke with Mr. Orquiz at the sentencing and asked "if he could file an appeal" and that Mr. Orquiz said he could. Hrg. Tr. at 20:20– 21:2. Defendant testified that he did not speak to Mr. Orquiz again. *Id*. at 20:25–21:9. Defendant stated that he tried to call Mr. Orquiz the next day, but did not reach him and was then transferred. *Id*. at 21:10–15. Defendant stated that he remembered Judge McDade informing him of his right to appeal, but did not remember him mentioning the 14-day time limit, even though the judge informed him—on two separate occasions that day—of both his right and the 14-day limit in the same sentence. *Id*. at 21:25–22:2; [CR Doc. 35] at 10, 14 ("The defendant is advised of his right to appeal this sentence by filing a written notice of appeal within 14 days of entry of judgment today.").

I do not find Defendant's testimony credible for several reasons. First, Defendant's explanation for what motivated his desire to appeal is inconsistent with the record. In his Motion, Defendant suggests that he wanted Mr. Orquiz to appeal based on his "actual innocence." [Doc. 1] at 8. However, at both his plea hearing and his sentencing, Defendant admitted he was guilty of the charges. *See* [CR Doc 36] at 17–18 and [CR Doc. 35] at 7. He offered no explanation at the evidentiary hearing as to why he would expect his attorney to file an appeal based on actual innocence, just moments after pleading guilty.

Second, Defendant's claim that he asked Mr. Orquiz to file an appeal on the day of sentencing is at odds with the long delay before he filed the instant § 2255 motion or raised the claim in any other manner. Even allowing for the difficulty Defendant might have experienced contacting Mr. Orquiz immediately after sentencing, it is still incredible that he waited as long as he did before raising this claim.

Third, Defendant has a significant incentive to remember and describe the events in question as he does. If the Court were to accept his version of events, he would be entitled to a delayed appeal. *See United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005).

On the other hand, several facts make Mr. Orquiz's testimony credible. First, Mr. Orquiz is a highly-experienced criminal defense attorney. He has practiced law in New Mexico since 1989 and has been a member of the CJA panel for 14 or 15 years. Hrg. Tr. at 5:13–14; 6:8–11. In that time, he estimates that he has represented defendants in more than a thousand illegal reentry cases. *Id.* at 6:12–23. He has never been reprimanded in almost thirty years of practice. *Id.* at 13:20–14:1. He testified that it is his practice to speak to clients to discuss the prospect of appeal, and that if a defendant asks him to appeal, he does. *Id.* at 13:9–19. Mr. Orquiz testified

7

that he analyzed the discovery in Defendant's case carefully and met with him three times before the plea hearing. *Id*. at 8:3–10.  He further testified that due to the nature of the charge of illegal reentry (that is, because it only requires proof that the defendant was previously removed from the country and then entered (or attempted to enter) the country), defenses are rarely available. *Id*. at 7:19–8:2; *see also* 8 U.S.C. § 1326.

Second, it is unclear why Mr. Orquiz would not have filed an appeal if one had been requested.  Such an appeal would have generated a CJA fee, if only for a standard *Anders* brief. *See Anders v. California*, 386 U.S. 738, 744 (1967).

Third, despite the time that has elapsed since the events in question, Mr. Orquiz had a remarkably clear memory of Defendant and his case.  He recalled that Defendant decided to plead "straight up" without a plea agreement even though he advised Defendant that taking a plea agreement was "safer."  Hrg. Tr. at 9:1–11.  Mr. Orquiz remembered that he then filed objections to Defendant's presentence report. *Id*. at 9:12–24; *see* [CR Doc. 14].  Mr. Orquiz also recalled correctly that Judge McDade reduced Defendant's Total Offense Level under the Sentencing Guidelines from 21 to 17, which lead to a sentence below what was recommended in the PSR. *Id*. at 11:6–10.  He also remembered that Judge McDade informed Defendant of his right to appeal. *Id*. at 12:3–9.  Mr. Orquiz's clear memory of Defendant's case distinguishes his testimony from that of defense counsel who understandably do not recall details of their interactions with a client and thus testify only on the basis of their habit and practice. *See, e.g., United States v. Vazquez-Pulido*, 45 F. App'x 833, 835 (10th Cir. 2002); *United States v. Collins*, 2006 WL 840354, at *4 (W.D. Okla. Mar 28, 2006).

For all these reasons, I find Mr. Orquiz's testimony to be more credible than Defendant's. The testimony and supporting evidence presented at the evidentiary hearing has not convinced the Court that Defendant told Mr. Orquiz to file an appeal. Therefore, the Court finds that Mr. Orquiz's performance as counsel was not deficient and that Defendant's allegation of ineffective assistance of counsel is without merit.

## Conclusion

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion be DENIED and that case No. 15-cv-0770 KG/SMV be DISMISSED with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

---

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**